## COHEN v. GIBRALTAR SAV. & BLDG. ASS'N.

### No. 9472.

Court of Civil Appeals of Texas. Galveston.
Oct. 23, 1930.

Rehearing Denied Nov. 20, 1930.

Lewis Wood, of Houston, for appellant.

Roberts, Monteith, Baring & Wilson, of Houston, for appellee.

GRAVES, J.

Appellant sued the appellee, a private corporation, to recover $600 and interest thereon, alleged to have been deposited with it by him upon an agreement that it should bear interest at the rate of 8 per cent. per annum for such time as it should retain the same, and would be subject to withdrawal at any time upon his giving thirty days' written notice of intention so to do; that he duly gave such notice and demanded the return of the amount, which was refused.

In reply, the appellee, after denying that any such alleged agreement was made between them, averred that appellant, through a signed, written application therefor, became a purchaser of 600 Installment Series A shares of its stock, subject to all its by-laws, of which the maturity value was to be $60,000, a certificate therefor having been delivered to and accepted by him, whereby he became a member of the association; that of the installments he undertook through a series of years to pay for such stock at the rate of $300 per month he only paid a total of $600, whereupon, long before the maturity thereof and in violation of the terms of the contract of purchase, especially of the provision that all cancellations made before maturity should be subject to a withdrawal charge or fee of 1½ per cent. of the maturity value of the stock purchased, appellant breached his contract and demanded the return of the $600 he had so paid in; that the 1½ per cent. withdrawal charge on the $60,-000 maturity value of the stock he had undertaken to purchase amounted to $900, which being charged against his account, left the appellee owing him nothing.

The court, sitting without a jury, rendered judgment that appellant take nothing, thereafter filing findings of fact and conclusions of law, those deemed material here being as follows:

"Findings of Fact.

"1. That on the 5th day of April, 1927, the plaintiff, Dave Cohen, entered into a contract with the defendant, Gibraltar Savings & Building Association for the purchase of Six Hundred Installment Series A Shares of the defendant Savings & Building Association, * * * the material portions of which are as follows:

" 'Houston, Texas, April 5th, 1927.

" 'I hereby apply for 600 Installment Series A Shares in the Gibraltar Savings & Building Association, Houston, Texas, subject to its by-laws.

" 'Maturity value $60,000.00.

" 'Monthly payment $300.00.

" 'Cancellation fee $1.50 per share.

" 'First payment $500.00 * * *

" '[Signed]  Dave Cohen.' "

"3. That on the reverse side of the above instrument, signed and delivered as above stated, the following statement was printed:

" 'We do not collect an Advance Membership Fee. There is no membership charge whatsoever if shares are carried to maturity. If withdrawn at any period, prior to maturity, the holder receives the accumulated amount of all payments and dividends, less a withdrawal fee of 1½% of the maturity value.'

"4. That on the 6th day of April, 1927, the defendant Association issued to plaintiff its Certificate No. 5518 for 600 shares of Installment Series A stock in said Association, which provided upon its face as follows:

" 'No. 5518      Installment      600 Shares

" 'Serial Group A

" 'Gibraltar Savings & Building Association

" 'Houston, Texas.

" 'This is to certify that Dave Cohen is the owner of 600 shares of Installment stock of the Gibraltar Savings & Building Association, transferrable only on the books of the Association by the owner in person, or by Attorney upon the surrender of this certificate properly endorsed.'

"5. That on the 6th day of April, 1927, in addition to the certificate of stock above mentioned, defendant Association issued to plaintiff a pass-book in said Association, crediting him with the initial deposit of $500.00, which pass-book contained upon the first page thereof the following printed statement:

" 'A cancellation fee of $1.50 per share is charged against all stock, which amount shall be left with the Association in case of withdrawal or cancellation before maturity. The fee on the certificate represented by this pass-book is $900.00. * * *'

"6. That their Certificate of Shares, together with the pass-book, were accepted by plaintiff and kept in his possession up until the time same were presented in evidence in this cause, at the request of the defendant.

"7. That on the 4th day of May, 1927, plaintiff made a payment of One Hundred Dollars to defendant Association upon this account, which was duly credited to him by defendant; that no further payments were ever made by plaintiff to defendant upon said account, making the total amount paid in by plaintiff Six Hundred Dollars.

"8. That on the reverse side of the Certificate of Shares issued to plaintiff and kept by him the by-laws of the defendant, Gibraltar Savings & Building Association, were set forth in full; that Article 3, Section 22, headed 'Cancellation Fee,' provided as follows:

" 'A fee of 1½% of the maturity value of the stock purchased shall be charged against all installment and prepaid shares of this Association. Providing all dues are regularly made this charge shall be void at the maturity of the shares. In the event of cancellation

and withdrawal of stock before maturity, this fee becomes void, and the withdrawal fee shall apply in lieu thereof.

" 'All stock withdrawn, before maturity will entitle the holder to receive the amount paid thereon, together with all dividends credited thereto, less 1½% of the maturity value thereof. At maturity, if dues have been regularly made, the holder is entitled to receive the amount paid thereon, together with the dividends credited thereto, without any membership or cancellation fee deduction.'

"9. That Article 3, Section 16, of the by-laws of defendant Association as printed on the reverse side of the certificate issued to plaintiff, headed 'Limiting Stock Ownership,' provided as follows:

· " 'No one person shall hold more than five hundred (500) shares of stock in the Association, except with the consent of a majority of the members of the Board of Directors.'

"10. That said certificate of stock issued by defendant Association to plaintiff and accepted and retained by him without objections or question on his part, was and is in all respects regular upon its face; that it bears the signature of the proper corporate officers, accompanied by the corporate seal; that said certificate of stock bears no indication upon its face that it is irregular in any respect or that it was issued without proper authorization, or in any maner improperly issued.

"11. That the written, signed application executed by plaintiff, Dave Cohen, on April 5, 1927, was signed by him at the office of defendant Association; that he was given full opportunity to read same before signing it; that the plaintiff is a man of reasonable intelligence and capable of understanding the nature of this transaction and was capable of reading and understanding the provisions of said application at the time he signed same.

"12. That the execution of said application by plaintiff was not accompanied with or brought about by fraud, duress, fraudulent representations, or overreaching on the part of defendant, its agents or officers, in any manner of form, and further that there was no misrepresentation of any kind made to plaintiff by defendant Association, its officers, agents or employees, in connection with the transaction between defendant and plaintiff.

"13. That the transaction entered into between plaintiff and defendant and the execution of said application by plaintiff was not brought about or effected by mutual mistake, nor by unilateral mistake on the part of plaintiff, accompanied by overreaching or misrepresentation of any sort by the defendant Association, its officers or agents.

"14. That the total amount paid in by plaintiff to defendant Association is Three Hundred Dollars less than the withdrawal fee upon the Certificate of Shares issued to plaintiff, which, according to the by-laws,

and also according to the provisions of the application signed by plaintiff, as well as by the printed statement in the pass-book issued to him, a withdrawal fee of 1½% of the maturity value, or Nine Hundred Dollars, is chargeable where the payments made by the shareholder are withdrawn before maturity.

"15. That the plaintiff in April or May, 1928, demanded of the defendant the return of his Six Hundred Dollars—paid to defendant by him, which demand was refused, on the ground that plaintiff's total payments did not exceed the amount of the withdrawal fee which he had agreed to pay in case of withdrawal before maturity, and that because of this fact there was no balance to be withdrawn by plaintiff.

### "Conclusions of Law.

"From the foregoing Findings of Fact, I conclude as a matter of law:

"1. That the plaintiff, Dave Cohen, by virtue of the particular facts in this case, became a member of the defendant Association and was chargeable with knowledge of its by-laws and was bound thereby.

"2. That the execution by plaintiff of the written application for 600 Installment Series A Shares in defendant Association, 'subject to its by-laws,' followed by the subsequent issuance to him of a certificate for the 600 shares so applied for, together with a pass-book in defendant Association, constituted in law a valid and binding contract, by which the rights of the parties were and are determinable.

"3. That the certificate of shares issued by defendant Association to plaintiff and accepted by the latter, being valid and regular upon its face, and being issued in proper form with the proper signatures and seal. thereupon, was, when introduced in evidence by defendant, presumptively valid and genuine until affirmatively shown to be otherwise.

"4. That it was not incumbent upon defendant to plead or prove facts establishing the validity or genuineness of said certificate of shares or to plead and prove that the by-laws of defendant Association have been complied with in issuing said certificate, in the absence of any showing by the plaintiff that said certificate was in any manner irregular or that any of said by-laws had not been complied with.

"5. That Article 3, Section 16, of the by-laws of defendant Association regarding limiting stock ownership and providing that 'no one person shall hold more than 500 shares of stock in the Association, except with the consent of a majority of the members of the Board of Directors', does not operate as a condition precedent making it incumbent upon defendant to plead and prove that the 600 shares issued to plaintiff were issued with the consent of the majority of the members of the

Board of Directors, but that, in the absence of an affirmative showing either upon the face of said certificate of shares or by other evidence in the case, it is presumed that tne certificate of shares issued to plaintiff was issued in compliance with this provision of the by-laws."

■ In this court none of these fact findings below are attacked as being so against the overwhelming weight of the evidence as to be clearly wrong, it being merely asserted that certain ones of them are against the preponderance of the evidence; after reviewing the statement of facts, it is not perceived that even that much is established, there being sufficient testimony to support them all as made; this court, being therefore without power to set any of them aside, must regard them as reflecting the established facts.

Appellant's brief is accordingly inept in assuming, notwithstanding, that the vastly different contract he declared upon and testified to was made between the parties, as well as that there was either any mistake—mutual, or upon his part only, accompanied by misrepresentation—or any imposition upon him, in the making of the one the trial court thus finds to have been entered into; that merely broaches detached inquiries this appellate tribunal of circumscribed powers is without authority to go into.

All that is left it in this state of the record is to determine whether or not the able trial court misapplied the law in any material respect to the facts as there found; no such error appears, the quoted legal conclusions squaring with the law as we understand it.

■ On this feature, appellant first assumes —directly contrary to the trial court's fifth conclusion—that the by-law conditionally limiting any one person's ownership of stock in the association to 500 shares constituted a condition precedent that the appellee was affirmatively bound to both expressly plead and prove fully conformed to before it could be heard to set up the 600-share stock purchase it answered his suit with, but the authorities are all the other way, and support the conclusion referred to. Thompson on Corporations, vol. 5, p. 407; Fletcher, Cyclopedia Corporations, vol. 5, p. 5768; Harriage v. Daley, 121 Ark. 23, 180 S. W. 333.

■■ The apparently regular 600-share certificate itself—that was so actually delivered to and retained by appellant—was at least prima facie evidence that it had in all respects been legally issued, for instance, that the requisite consent thereto of the majority of the board of directors had been obtained, and appellant, having alleged that it was issued without authority had the burden of proving his charge; but he wholly failed to meet it, offering no proof whatever, and contenting himself with the mere averment.

■ A further contention is that the appellee's retention in the circumstances of the $600 so paid it by appellant was contrary to the terms of R. S. article 870, hence illegal, in that, within the meaning of that statute, it constituted a misappropriation of the capital stock of the association; this seems fully answered by the consideration that such a denouement was fully provided for therein, and, had appellant chosen to carry out his part of the contract the court below found he had made, not only that sum, but also all other amounts he may thereafter have paid in, together further with all dividends the association may have earned for him thereon while the agreement was extant, would have been credited upon the capital stock so undertaken to be purchased by him, and no withdrawal, membership, or cancellation fee, would ever have been charged against his account; this result is specially provided for in the concluding part of section 22, article 3, of the appellee's by-laws, as quoted in the eighth fact finding of the trial court.

If, on the one hand, the forfeiture liability appellant must be held to have knowingly incurred was a severe one, unmistakably "it was so nominated in the bond," and he agreed in advance to thus penalize himself, in event he withdrew short of the completion of his undertaking; on the other, the alluring pot of gold at the end of the rainbow of full performance on his part must also be looked to in determining whether the contract as a whole violated the public policy of the state, as expressed in the article invoked. This excerpt from the appellee's brief is quoted with approval as concluding the matter:

"Article 870 provides in substance that operating expenses of Building and Loan Associations shall be paid from gross earnings of such Associations. The record shows that Mr. Cohen entered into an agreement with the defendant Association by which he agreed to invest monthly in the Association the sum of $300.00, until such time as that sum, together with earnings thereon, would mature the face value of the 600 shares of stock contracted for. If he had abided by the agreement thus made, then in accordance with Article 3, Section 22, of the by-laws, which was a part of the agreement, he would have received at maturity every dollar paid into the Association, together with the dividends credited thereto, 'without any membership or cancellation fee deduction.' In such case it is obvious that all expenses, such as agents commissions, etc., would have been paid as required by the statute out of the gross earnings of the Association, and no part of the money invested by Mr. Cohen would have been so used.

"But Mr. Cohen, having elected to breach his contract and discontinue his payments, the Association was deprived of the opportunity of investing the payments he had

agreed to make. Under the terms of his contract, the $600.00 paid in, or any amount he might have paid in up to $900.00, was forfeited by him as the agreed consideration for the privilege of withdrawing from his contract, and such sum was no longer accounted as capital stock. Once the withdrawal provision of the contract became operative, upon Mr. Cohen's election to withdraw, the $600.00 paid in by him became a part of the gross earnings of the Association to be used in the defraying of its operating expenses in exactly the manner pointed out by article 870 of the Statute. Consequently, no question as to the validity of the contract could reasonably be interposed, so far as this statute is concerned. In fact, this objection appears to have been a mere after-thought on the part of appellant, and is based upon no pleading or evidence introduced upon the trial of this case."

It follows that the judgment appealed from should be affirmed; it will be so ordered.

Affirmed.